### STERLING *v.* WARDEN.

The plaintiff had been postmaster, and had kept the post-office in a room set apart for that purpose, in his own dwelling-house. The defendant, acting as the servant and assistant of a newly appointed postmaster, entered the office so kept by the plaintiff, under orders from his principal, to remove the furniture and fixtures, &c., belonging to the government, to the new office. *Held*, that such entry being, by authority of law, an abuse of the authority, as by committing an assault and battery on the plaintiff and his wife, might have the effect to make the original entry wrongful, and the defendant a trespasser *ab initio*.

TRESPASS, by Nathaniel K. Sterling against Alexander Warden. The first count alleged the breaking and entering of the plaintiff's dwelling-house, July 30, 1869, and an assault upon the plaintiff and his wife. The second count alleged an assault on the plaintiff. The third count alleged an assault on the plaintiff's wife. Plea, the general issue and a justification.

The defendant justified his entrance into said close of the plaintiff upon the ground that the room into which he entered was a public post-office, kept by the plaintiff as postmaster for a long time prior to and at the time of the alleged assault; that one Gilchrist had been appointed postmaster, and was duly qualified as such, and that he entered said close on said day to remove the furniture and fixtures of the post-office to another place which he had prepared for that purpose; and that the defendant, " at the request and direction of said Gilchrist, and as his servant, did, on, &c., go to said post-office for the purpose of aiding and assisting the said Gilchrist, as aforesaid, and for the other and further purpose of getting and obtaining any mail matter which then and there might be in said office, for him, the said defendant." " And that when the defendant arrived at said post-office building, as aforesaid, and during all the time that he was in and about said post-

office building, said Gilchrist was in and about said building for the purpose, and was engaged in removing said furniture, articles, and things as aforesaid."

As to the assault upon the plaintiff and his wife, the defendant pleaded *son assault demesne ;* and to the last plea, the plaintiff replied, among other things, that the defendant used more force than was necessary in self-defence, and in that way injured the plaintiff. Issues were joined upon these pleadings.

. There were various other pleas which, upon the evidence and under the rulings of the court, became immaterial.

The plaintiff claimed that the defendant did not, in good faith or in fact, enter said post-office, either as the agent or servant of said Gilchrist, or by his order or direction, for the purpose of removing the furniture or fixtures from the same, or for the purpose of obtaining any mail matter which might then and there be in said office for him, but that, in truth and in fact, said defendant entered said premises with the intent and for the sole purpose of assaulting, beating, kicking, and otherwise abusing the plaintiff and his wife.

The plaintiff offered evidence of threats made by the defendant, in February, 1869, that he would kick the plaintiff,—to which the defendant objected ; but the evidence was admitted, the defendant excepting.

Warden, the defendant, was a witness in chief. He was inquired of, on cross-examination, as to the state of feeling existing between him and the plaintiff, at the time of the affray and at the time of the trial ; and he stated that, at the time of the affray, and also at the time of the trial, he did not like the plaintiff very well, but that he had not, on either occasion, any very hostile feelings towards him. The plaintiff then, for the purpose of contradicting this witness, and also for the purpose of showing malice on the part of the defendant at the time of the affray, offered evidence that shortly before the affray the defendant had called the plaintiff a liar, a d—d liar, a jackass, a d—d thief, a forger, and a d—d scoundrel, and that Sterling called him hard names, and twitted him of his father's alleged meannesses and crimes. Warden thereupon admitted that on one occasion he had applied such epithets to the plaintiff, and offered to go into an explanation of the circumstances for the purpose of showing that he had sufficient provocation, and that the plaintiff on that occasion was more to blame than he was ; but the court excluded such explanation, and the defendant excepted.

It appeared that all the time that the defendant was at said post-office building, and when he arrived there, the said Gilchrist was present for the purpose of removing the furniture and fixtures belonging to the post-office department from that place to the new room which he had prepared for the post-office. It also. appeared that said Gilchrist had appointed the defendant an assistant postmaster under himself,—the defendant having received no commission or written authority from any one, but all his authority was derived from the merely verbal appointment of the postmaster,—and that the defendant

had taken the oath of office as such assistant. The court instructed the jury that the room in which the post-office was kept was a public place, so long as the post-office and the mail matter belonging thereto was kept there; and that the defendant had, in common with all other citizens, a right to enter it for a lawful and proper purpose; and that, if the said defendant entered said office for the purpose of obtaining any mail matter which might be there for him, or if, in good faith, he went as the servant of the new postmaster, as he had alleged in his plea, he would have the right to enter said post-office building and room for such purposes, and would have the right to use so much force as was necessary to overcome any resistance he might meet with from Sterling or his wife, in entering the said room, or in doing whatever he might lawfully do, by the order of the postmaster, in the premises;—to which there was no exception.

The defendant requested the court to charge the jury that, if the defendant entered said office as assistant postmaster for the purpose of removing the post-office furniture, that would be a lawful purpose; and the defendant might justify under that authority, even though he might not be justified as the servant of the postmaster, acting in his presence and by his order, which the court declined to do,—but did instruct the jury that, if the defendant had entered, in the absence of the postmaster and without his special orders, he might have justified as assistant postmaster, but that his appointment as assistant postmaster would not give him power or authority to act in opposition to the legal and proper orders of the postmaster, when in his presence, and that he could derive no power or authority from that appointment to do anything other or more than what he might legally do, as the servant of the postmaster, if done in his presence and by his express order and direction. The defendant excepted to this refusal to instruct, and the subsequent instructions.

The defendant requested the court to charge the jury that, if the defendant had a right to enter the post-office room originally, whatever he might do afterwards could not make him a trespasser from the beginning, so that the plaintiff could maintain his action upon the first count for breaking and entering the plaintiff's close; which instructions the court declined to give, and defendant excepted. A question was raised by the counsel as to the propriety of Gilchrist's taking Warden along with him, as his servant, to assist him in removing the post-office furniture and fixtures. It appeared that Gilchrist knew that Warden was very objectionable and offensive to both the plaintiff and his wife, and that they had both notified said Gilchrist not to take Warden to their house for the purpose of assisting him in moving the office; also notifying him that Warden would not be permitted to enter their house if he came, on account of his previous abuse to the plaintiff's family. It also appeared that, when Gilchrist was about to go to the plaintiff's house to remove said furniture, there were from six to twelve men sitting near him unemployed, any one or all of whom would willingly have gone with and assisted said Gilchrist, instead of

Warden, if they had been invited to do so. The defendant requested the court to instruct the jury that the fact that other persons might have been obtained to assist in moving the post-office furniture had nothing to do with the question, and was not to be considered by the jury in deciding whether Warden was a proper person for Gilchrist to select to assist him in moving said furniture. The court declined to give this instruction, and the defendant excepted.

In addition to the instructions heretofore stated, the court also instructed the jury that, if the defendant's claim to enter, for either of the purposes set forth in his plea, was a mere pretence, a sham, and a fraud, and his real and sole object in entering was for the purpose of there assaulting, beating, kicking, and abusing the plaintiff or his wife, then he could not justify his entry, and he would be wrongfully in the office at the time of the affray, and he would be liable upon the first count in the plaintiff's declaration for breaking and entering, and for all illegal beating and abuse of the plaintiff or his wife ; but if the jury should find that the defendant entered the post-office in good faith, for either of the purposes specified in his plea, and was thus rightfully in the office at the time of the affray, then the plaintiff could not maintain the first count in his declaration, unless the defendant, after his said entry, so conducted as to make him a trespasser from the beginning, which the court instructed the jury he *might* do, in which case he would be liable on said first count ; otherwise, their verdict would be for the defendant on said first count, in which case they might find whether the defendant used any more force than was necessary in order to enable him do what he thus had a right to do, and ·if so, they might find for the plaintiff on the second or third counts, or both, for all damages caused by such excess of force ; otherwise, their verdict would be for the defendant on these two counts ;— and the court directed the jury, in case. their verdict should be for the plaintiff, to also return some statement of the grounds upon which it was founded.

The jury returned a verdict for the plaintiff, and also certified that they found that " the defendant was not rightfully in the post-office at the time of the affray,"—which verdict the defendant moved to set aside.

The court instructed the jury as to what would constitute an excess of force for which the defendant might be liable, to which no exception was taken ; and also as to what acts would make the defendant a trespasser *ab initio*, to which no exception was taken, except that above stated, that no acts of his *could* make him a trespasser *ab initio*.

The questions of law were reserved.

*H. & G. A. Bingham* and *Carpenter*, for the plaintiff.

*C. W. & E. D. Rand*, for the defendant.

LADD, J.   The defendant, Warden, was a witness, and evidence that he threatened to kick the plaintiff, in February, 1869, was properly

admitted, to show the state of his feelings.  *Carr* v. *Moore,* 41 N. H. 131 ; *Drew* v. *Wood,* 26 N. H. 363 ; *Titus* v. *Ash,* 24 N. H. 319.

It was immaterial what created the hostility.  The question, which was most to blame at the time the defendant applied to the plaintiff the injurious and defamatory epithets, was not in issue ; nor is it clear why the defendant's feelings should be supposed to be less bitter or vindictive, in case he had suffered sufficient wrong to afford some supposed justification for such language, than if he had no provocation at all.  But, however that may be, it is very clear that there must be a limit placed to inquiries of this sort, at some point ; and we think it was a proper exercise of discretion by the judge at the trial to stop the investigation where he did, after enough had been admitted to show the character and extent of the ill-feeling.

So far as I am able to comprehend the defendant's principal exceptions as stated in the case, that is, those which relate to the instructions given the jury and the refusal to give others which were requested, they all come to one thing, and present but a single question for our decision, namely, whether, assuming the defendant's entry in the first place to have been legal, he could, by any subsequent act committed on the premises while there for the purpose specified in the plea, make himself a trespasser *ab initio,* so as to be liable on the first count for breaking and entering.  The court instructed the jury, in substance, that whatever Gilchrist, the new postmaster, might legally do there, the defendant might do as his servant ; and that the defendant's authority, thus derived from the postmaster, was sufficient to justify an entry for the purpose of removing the property belonging to the United States.  The question at the trial was, whether the defendant, having all the power and authority of the postmaster, did any act which rendered his original entry wrongful ; and the question now before us is, whether any act done by him there, after an entry, rightful in the first place by virtue of authority derived from the postmaster, either as his servant, or *virtute officii* as assistant postmaster, could legally have the effect to make him a trespasser *ab initio.*

An objection has been raised in the course of the argument, for the first time, with respect to the pleadings.  It is said that the plaintiff ought to have replied the matter on which he now relies to support the first count of his declaration, inasmuch as it is matter which arose after an entry which is justified by plea.  But no such question is presented by the case ; and the pleadings are not before us, except so far as they were deemed material to the questions raised at the trial on which we are now to pass.  The general rule is well understood, that, where acts committed after an entry, which is justified by plea, are relied on to charge the defendant as a trespasser *ab initio,* such acts should be pleaded in a replication—*The Six Carpenter's case,* 8 Co. 146 ; *Gargrave* v. *Smith,* Salk. 122 ; *Sir Ralph Boney's case,* 1 Vent. 217 ; *Butman* v. *Wright,* 16 N. H. 219 ;—and it was said by Lord HALE, in *Boney's case,* that to state such matter in the declaration would be out of time,—"like leaping before you come to the stile.

The matter relied on here appears to have been stated in the declaration by way of aggravation ; and although, so far as the right to recover on the count for breaking and entering is concerned, this was doubtless irregular, and like " leaping before you come to the stile," yet the court at the trial could not have failed to see that the declaration afforded substantially the same notice to the defendant as the same matter pleaded in a replication would have given ; and it is very likely, therefore, that, if the objection had been taken at the trial, the plaintiff would have had leave to amend his pleadings in a particular, which, under the circumstances of this case, appears to be more a matter of form than of substance.     Further: it is possible, to say the least, that an examination of the whole record might show some answer to the objection.     But however this may be, we think the objection comes now too late, and that it cannot properly be considered by the court in the form in which it was taken at the argument.

When this case was before us on demurrer to the pleas (51 N. H. 217), the questions considered and decided by the court were, of course, only such as arose upon the pleadings ; and my brother FOSTER, in delivering the opinion of the court, certainly says, at p. 230,—" If the right of entry is shown, the action, so far as it rests upon the first count, fails entirely, and the plaintiff cannot recover upon proof of the subsequent assault merely."     This remark clearly relates to the question then under discussion, namely,—the effect of a license in fact as regards subsequent wrongful acts committed by the licensee after an entry under it.     That nothing more was intended is very conclusively shown by the paragraph immediately following, where it is said that " Where the authority or license to enter and do certain things is given by the party, there, although the person to whom the authority is given may, by the commission of subsequent acts, be a trespasser, yet such subsequent acts will not affect the original entry so as to make that which was sanctioned by the party complaining a trespass."     This, as well as the whole remaining part of the discussion, shows that the elementary doctrine of the *Six Carpenters' case,* that the abuse of an authority in law will make the party a trespasser *ab initio,* was not lost sight of.     Furthermore, the remark, as the case was then presented on the pleadings, was, doubtless, strictly and literally correct in any view, and ought to have been a sufficient suggestion to the plaintiff that, unless he got leave to file a replication, the defendant at the trial might raise a troublesome and dangerous objection, which, as the event turned out, he failed to take.

But the point mainly insisted on by the defendant is, as already suggested, that he was entitled to the instruction that if the defendant had a right to enter the post-office room originally, whatever he might do afterwards *could not* make him a trespasser *ab initio.*     The contention is, that this room, having been appropriated and dedicated to the public use by the plaintiff as a post-office, was, *pro hac vice,* not the plaintiff's close, but the close of the United States, and that the postmaster, being clothed with all the rights of the United States, as to

said room, by virtue of his office, his possession or occupation thereof by himself, or his servant or assistant, could not be wrongful under any circumstances, but would stand the same as the possession of an absolute owner or lessee against one having no right at all; and it is thought this view is warranted by the opinion heretofore rendered in the case.

It must be observed, that the question principally discussed by my brother FOSTER, in that opinion, was one not understood to be raised by the case, or necessary to its decision; but was considered because it had been mainly argued by counsel, and because its decision was supposed to be necessary in view of a future trial of the cause. See 51 N. H. 231. We all, at that time, concurred in the views there expressed upon the question thus brought into the case, and entertain no doubt now of their correctness. But whether that question is the one which has actually arisen on the trial since had, and which is now presented for our consideration, is another matter. Upon a full review of the authorities and the reason of the thing, it was there held, as stated in the head note, that "A person entitled to the immediate possession of property located upon the premises of another, without the fault of the party entitled to the possession of such property, may enter those premises, after demand, without legal process, against the consent of the party in possession, and by force, and remove the property, provided no more force is employed than becomes necessary by the resistance interposed by the other party to prevent the entry and subsequent removal of the property." Now, if the case came within the principle thus laid down, of course the position of the defendant would be correct; that is, if it were the same as though the post-office room had been located in a public building which was the property of the government, the application of the doctrine laid down in the former opinion would undoubtedly lead to the result claimed. But we think such was not the fact. The right of the United States, in the room set apart by the plaintiff in his own dwelling-house for the purposes of a post-office, was not analogous, so far as we can see, to that of an owner or lessee. The case of *Smith* v. *Guardians of Birmingham*, 7 E. & B. 483, cited by the defendants' counsel in support of their position, is not in point, because there the premises in question were demised to the postmaster-general at a rent of £310 for thirty years. It is true, every postmaster is required by law to "keep an office"—4 U. S. St. 105—and the acceptance of a commission, in a place where no other provision is made, would doubtless imply an undertaking to do so. But, suppose the postmaster in one of our villages,—as is understood to be the common practice,—should set apart a portion of his shop, or store, or dwelling-house, to be used for the safe keeping and distribution of the mails, and the general business of his office: could it be for a moment contended that the government thereby acquire such rights in his building, or in the portion thereof so set apart for this public use, that he would not be at liberty to move the office into some other building, or change its location when once

established ?  He must keep an office : but what does that mean ?
Certainly no more, in general terms, than this,—that he shall provide a
place where the people having business with the post-office may be
fairly and reasonably accommodated, and the rights and interests of
the government be secure.

The rights of the public, that is, of persons having business with
the post-office, and the rights of the government, in a room thus appro-
priated, are not to be confounded.   The right of the public is, to enter,
upon the business for which the office was established.   It is a public
office, and, as to persons having business there, it makes no difference
whether it be kept in a building owned by the United States or else-
where.   But the rights of the United States, or of officers representing
the United States, in such an apartment, can only be such as are
necessary and convenient for the proper and full control, regulation,
and management of the post-office department.   These purposes
neither call for nor imply any right to the land itself.

If, then, it be taken that the defendant possessed all the powers and
rights of the United States in the premises, he does not, in our view,
stand at all in the position of an owner or lessee of the room, and we
see no reason why he might not conduct himself in such a way as to
become a trespasser *ab initio,* the same as any other person whose
original entry is by authority of law ; and it is quite elementary that
an abuse of such authority makes the wrong-doer a trespasser from the
beginning.

A question was raised at the trial as to the propriety of Gilchrist's
taking the defendant along with him, as his servant, to assist in moving
the post-office furniture and fixtures.   From the facts stated in the
case, it is not clear how this inquiry became material ; but no objection
seems to have been made on that ground, and whether it was relevant
to the main issue tried is not a question now before us.   Evidence
was put in, without objection, to the effect that Gilchrist knew that
Warden was very objectionable to both the plaintiff and his wife ; and
that when Gilchrist was about to go to the plaintiff's house to remove
the furniture, there were from six to twelve men sitting near him,
unemployed, any one or all of whom would willingly have gone with
and assisted him, instead of Warden, if they had been invited so to do.
The defendant requested the court to instruct the jury that the fact
that other persons might have been obtained to assist in moving the
post-office furniture had nothing to do,—not with the main question
tried, but,—with the question whether Warden was a proper person for
Gilchrist to select to assist him in removing said furniture.   That,
clearly, cannot be so.   If the question whether Warden was a proper
person was in the case, as it seems to have been for some purpose or
other, there can be no doubt but that the evidence was admissible upon
that question.   The propriety or impropriety of Gilchrist's conduct being
the issue, the circumstances under which he acted, and which must
to a considerable extent control his conduct, were proper for the jury
to consider.

So far as we understand the case and the position and claims of the defendant, this disposes of all the objections taken at the trial, and there must be          ·          *Judgment on the verdict.*